# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 5, 2025
Lyle W. Cayce
Clerk

No. 24-50751

Jade Barnhart, *as representative of* the estate of Bryan Harper,

*Plaintiff—Appellant*,

*versus*

Brent Stroman, *Chief of Police for the Waco Police Department, in his individual capacity*; Manuel Chavez, *Waco Police Department Detective, in his individual capacity*; McLennan County; City of Waco; Abelino Reyna; Robert Lanning,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-465

Before Wiener, Willett, and Ho, *Circuit Judges*.

Per Curiam:[*]

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

Plaintiff-Appellant Bryan Harper was arrested and charged with engaging in organized criminal activity in connection with the Twin Peaks shootout. Harper sued, alleging that his arrest violated the Fourth Amendment, and that law enforcement committed other constitutional violations.

After Harper's death, his widow, Jade Barnhart, was substituted as plaintiff and continued the suit. The district court dismissed the complaint for failure to state a claim. Because Barnhart failed to plausibly allege a constitutional violation, we affirm.

**I.**

This is yet another case arising from the 2015 Twin Peaks shootout in Waco, Texas. Our court has resolved several appeals arising from this incident. *See, e.g. Wilson v. Stroman*, 33 F.4th 202 (5th Cir. 2022); *Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021).

Harper belonged to the Cossacks Motorcycle Club and was present at Twin Peaks before and during the shootout between Cossacks members and the Bandidos Motorcycle Club members. Law enforcement detained Harper, like many others present at the altercation, for the remainder of the day at the Waco Convention Center. Ultimately, law enforcement arrested 177 individuals, including Harper, for engaging in organized criminal activity. *See Terwilliger*, 4 F.4th at 277–79.

As in *Terwilliger*, law enforcement supported Harper's arrest with a fill-in-the-name affidavit prepared by Defendant-Appellee Detective Manuel Chavez. *See id.* The affidavit asserted that Cossacks members and Bandidos members engaged in an altercation; that during the altercation, members and associates of both clubs brandished and used weapons; that those weapons were used to threaten and assault members of the opposing club; and that as a result of the altercation, multiple persons were killed or injured. *See id.* at

278. It also alleged that the arrestee "was apprehended at the scene, while wearing common identifying distinct signs or symbols or had an identifiable leadership or continuously or regularly associate [sic] in the commission of criminal activities." *Id*.

Harper claimed that District Attorney Abelino Reyna devised a mass arrest scheme with the cooperation of the other Defendants to "send a message" to the community. Allegedly, Defendant Reyna's scheme included Justice of the Peace Walter Peterson, who agreed to sign affidavits as a "neutral and detached" magistrate, despite allegedly visiting the crime scene and participating in the investigation. The Chavez affidavit and Peterson-approved warrant subsequently supported Harper's charge of engaging in organized crime (EIOCA) and conspiracy to commit murder.

Months later, Harper's case was presented to a grand jury, where Reyna—or another attorney acting under his direction—allegedly misled the grand jury and tainted the proceedings. Harper sued, asserting several violations of his Fourth Amendment rights.

First, he alleged that the fill-in-the-name affidavit was insufficiently particularized in violation of *Malley v. Briggs*, 475 U.S. 335 (1986). Alternatively, he alleged Defendants violated *Franks v. Delaware*, 438 U.S. 154 (1978), because portions of the affidavit were false as applied to him. He then contended that because Peterson participated in the investigation, there was no neutral and detached magistrate, in violation of *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). He further brought conspiracy and bystander liability claims against all Defendants, supervisory-liability claims against Defendants Stroman and Lanning, and municipal liability claims against the City of Waco and McLennan County.

The district court initially dismissed Harper's lawsuit under the independent intermediary doctrine, holding that the grand jury's indictment

broke the chain of causation for any false-arrest claim. Our court reversed and remanded, instructing the district court to reconsider the case in light of our holding in *Wilson*.

While that appeal was pending before our court, Harper died. Barnhart, Harper's widow, was substituted as plaintiff and continued the suit.

On remand, the magistrate judge again recommended dismissal. The magistrate judge first found that the arrest warrant was sufficiently particularized because, under *Terwilliger*, "standing alone, the warrant affidavit sufficiently alleged probable cause to arrest those to whom its facts applied." The magistrate judge then concluded that the complaint failed to allege facts supporting a *Franks* violation. Finally, he held that Peterson's involvement in the investigation did not deprive Harper of a neutral and detached magistrate. Because there was no plausible Fourth Amendment claim, the magistrate judge recommended dismissing the remaining claims. The district court agreed and dismissed the complaint. Barnhart appealed.

## II.

Barnhart asserts that the district court erred by dismissing all her claims. But on appeal, Barnhart waives her claims against Defendants Swanton, Schwartz, Frost, Rogers, and McLennan County. We review Rule 12(b)(6) dismissals de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff. *See Parker v. LeBlanc*, 73 F.4th 400, 404 (5th Cir. 2023).

### A.

Barnhart first contends that the district court erred in dismissing her *Malley* claim. Under *Malley*, "an officer can be held liable for a false arrest despite the issuance of an arrest warrant by a magistrate if the affidavit the

officer presented to the magistrate was so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Wilson*, 33 F.4th at 206 (internal quotation marks and citation omitted); s*ee also Malley*, 475 U.S. at 344–45.

As our court in *Terwilliger* observed, "the warrant affidavit sufficiently alleged probable cause to arrest those to whom its facts applied." 4 F.4th at 282. To be sure, our court ultimately concluded that, in light of the *Franks* claims brought by the plaintiffs—alleging that Defendants had omitted facts showing that they were not members of the Cossacks or Bandidos, were not present at Twin Peaks, or were not wearing symbols associated with either club—the corrected affidavit was insufficient to support probable cause as to some of the *Terwilliger* plaintiffs. *See id*. at 283. But unlike the plaintiffs in *Terwilliger*, Barnhart concedes that Harper was a member of the Cossacks, was present at Twin Peaks, and was wearing Cossack symbols. So, all the facts supporting probable cause remain. *See id*. at 282.

Given the totality of the facts alleged in the affidavit, it was not so lacking in indicia of probable cause as to render belief in its existence unreasonable. Dismissal was therefore appropriate.

**B.**

Barnhart alternatively contends that law enforcement committed a *Franks* violation because the affidavit was not true as applied to Harper. An officer is liable under *Franks* if he "deliberately or recklessly provides false, material information for use in an affidavit in support of a warrant or makes knowing and intentional omissions that result in a warrant being issued without probable cause." *Wilson*, 33 F.4th at 206 (cleaned up). Accordingly, to sufficiently plead a *Franks* violation, Barnhart must allege that the affidavit omitted facts that would have undermined probable cause for Harper's arrest.

As our court stated in *Terwilliger*, the form affidavit established probable cause to conclude "members or associates of the Bandidos and Cossacks instigated and were involved in the Twin Peaks shootout, and that their conduct rose to the level of violating the EIOCA." 4 F.4th at 282. Or as our court stated in *Wilson*, the affidavit "represented that each individual subject that was arrested . . . was a member or associate of the Bandidos or Cossacks who was involved in the shootout and the unlawful activity more generally described in the affidavit." 33 F.4th at 206–07. It follows that Barnhart must allege the affidavit omitted facts showing that (1) Harper was not a member of the Bandidos or Cossacks or (2) that he was not involved in the unlawful activity described. *See id*.

But Barnhart concedes that Harper was a member of the Cossacks at Twin Peaks before, during, and after the shootout. She also concedes that Harper was wearing Cossack symbols that day. Barnhart contends the affidavit was misleading as to Harper because it "omitted the fact that Mr. Harper, in particular, did not brandish any weapon during the incident" and "hurriedly crawled into the restaurant immediately after the fight started."

But those omissions would not undermine probable cause that Harper was engaged in EIOCA. Under Texas law, the overt-act element of EIOCA is met by nonviolent or noncriminal acts, including acts that encourage, solicit, direct, aid, or attempt to aid the commission of the underlying offense. *See Otto v. State*, 95 S.W.3d 282, 284 (Tex. Crim. App. 2003).

So even if Defendants omitted those facts, the affidavit remained accurate as applied to Harper. And those facts are sufficient for probable cause that Harper engaged in the unlawful conduct generally described in the affidavit. *See Wilson*, 33 F.4th at 206–07. Therefore, Barnhart fails to plausibly allege a *Franks* violation.

### C.

Barnhart next contends that the district court erred in holding that Peterson's involvement in the Twin Peaks investigation did not violate *Coolidge*. The Fourth Amendment's substantive rights include review of a probable-cause affidavit by "a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Coolidge*, 403 U.S. at 449 (citation omitted). "Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972).

Here, Barnhart alleges that Peterson was not neutral because he had spent thirty-three years as a law enforcement officer and participated in the Twin Peaks investigation by visiting the crime scene and viewing the bodies of the deceased. We have held that prior law enforcement service is insufficient to show a lack of neutrality. *See United States v. McKeever*, 906 F.2d 129, 132 (5th Cir. 1990). Similarly, we have held that visiting a crime scene is also insufficient. *See United States v. Duncan*, 420 F.2d 328, 331 (5th Cir. 1970).

All that remains is the conclusory statement that Peterson participated in the investigation. And since we do not accept "conclusory statements or naked assertions devoid of further factual enhancement," the district court's dismissal was appropriate. *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up).

* * *

Because Barnhart has failed to allege a constitutional violation, her remaining claims must fail. We affirm.